**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ANTONIO C. PONCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-18-2345 |
| | § | |
| CHASE BANK PRIVATE CLIENT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Antonio C. Ponce, proceeding *pro se*, sued Chase Bank Private Client, alleging that Chase illegally took his home mortgage payments, wrongfully increased his monthly payments, and bought insurance on his home, charging him for the premiums, but failed to repair hurricane damage. (Docket Entry No. 1-2 at 11–12). Chase has moved to dismiss for failure to state a plausible claim or, alternatively, for a more definite statement. (Docket Entry No. 5). The court converted the motion to dismiss into a motion for summary judgment, mooting the motion for a more definite statement, and allowed the parties to supplement the record and their briefs. They did so, Mr. Ponce filed a number of documents and Chase did as well. Based on a careful review of the complaint, the motion, the record, the applicable law, and after two hearings and a mediation effort, the court grants summary judgment for Chase. Final judgment is entered by separate order. The reasons are explained in detail below.

**I.  Background**

In August 2004, Mr. Ponce obtained a mortgage from Chase for $66,103, secured by his home in Montgomery County, Texas. (Docket Entry No. 5-1 at 67). Mr. Ponce and Chase executed a "Promissory Note," an "Agreement to Provide Insurance," and a "Homestead Lien Contract and

Deed of Trust" in connection with the mortgage. (Docket Entry Nos. 5-1 at 67, 19-1–19-2).

The Promissory Note required Mr. Ponce to make "360 payments of $466.72." (Docket Entry No. 5-1 at 67). His interest rate of 7.85% was reduced to 7.60% because he opted into automatic deductions, but if Mr. Ponce stopped the automatic deductions "for any reason," Chase had the right to return the rate to 7.85%. (*Id.*). The note allowed Chase to increase payments for "reasonable" and "necessary" expenses that Chase incurred to protect "its interest or the enforcement of its rights," including "expenses for bankruptcy proceedings." (*Id.* at 68).

Under the Agreement to Provide Insurance, Mr. Ponce had to purchase "[f]ire and extended coverage" insurance, but not "special flood hazard insurance." (Docket Entry No. 19-1 at 1). If Mr. Ponce failed to purchase insurance, Chase could insure the property "at [Mr. Ponce's] expense" by adding the "cost of any such insurance" to his "indebtedness as provided in the security document." (*Id.*). The Agreement stated:

> If [Chase] so purchases any such insurance, the insurance will provide limited protection against physical damage to the collateral, up to an amount equal to the lesser of (1) the unpaid balance of the debt excluding any unearned finance charges, or (2) the value of the collateral.

(*Id.* (emphasis omitted)).

The Deed of Trust detailed Mr. Ponce's insurance requirements, requiring him to "procure and maintain policies of fire insurance with standard extended coverage endorsements . . . for the full insurable value covering all Improvements." (Docket Entry No. 19-2 at 2). If Mr. Ponce failed to obtain insurance, Chase could "take any action" deemed "appropriate to protect [its] interests." (*Id.* at 3). The "expenses" that Chase paid "for such purposes" would "become a part of [Mr. Ponce's] indebtedness." (*Id.*)

Between 2004 and 2011, Mr. Ponce stayed mostly current on his $466.72 payments. In

2011, Mr. Ponce entered bankruptcy and, at that time, he was two months behind on payments. Chase notified Mr. Ponce and the bankruptcy trustee that the mortgage interest rate had been adjusted, but Mr. Ponce's monthly payment remained $466.72. The bankruptcy court's records reflect that Mr. Ponce was $2,211.82 in arrears as of July 2012. (Docket Entry No. 5-1 at 6). In June 2016, after Mr. Ponce had made all the required payments to his trustee, the bankruptcy court issued an order stating that Mr. Ponce was current on his mortgage payments, and that Mr. Ponce owed a $466.72 payment on June 1, 2016. (*Id.* at 13).

Mr. Ponce stayed current on his payments until January 2017, when his monthly payment was reversed. The payment and a late fee carried over to February, leaving him with past-due payments and late fees. In February, Chase approved Mr. Ponce for a "Trial Period Plan" that would lower his payments to $419.62 for April, May, and June 2017, so long as Chase received the first adjusted payment by April 1, 2017. (Docket Entry No. 19-3 at 1). Mr. Ponce did not pay the total amount due in February and March, and he did not make his April payment until April 18, which disqualified him from the Trial Period Plan. Because Mr. Ponce failed to comply with the Trial Period Plan, Chase continued to charge him $466.72, the amount indicated in his promissory note. In September 2017, Chase increased Mr. Ponce's payments by $118.35, up to $585.07, to cover "Taxes and/or Insurance." Over the next year, Mr. Ponce's past-due payments and late fees accumulated and, by May 2018, he owed $2,402.70.

That May, Mr. Ponce sued Chase, alleging that it illegally took his payments, wrongfully increased his payments, and failed to repair hurricane damage. (Docket Entry No. 1-2 at 11–12). As to the payments, Mr. Ponce alleged that Chase increased his monthly payments from $451.88 to $466.72 in 2011, without justification, and that Chase increased his payments to $585.09 in 2018, after it purchased insurance on his home. (*Id.*). Mr. Ponce further alleged that Chase owed him

3

money for hurricane damage under the insurance policy that Chase purchased. (*Id.* at 2).

Chase timely removed to federal court and then moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that judicial estoppel barred Mr. Ponce's claim regarding the alleged increase from $ 451.88 to $466.72 and that Mr. Ponce failed to state a plausible claim for relief. (Docket Entry No. 5 at 4–6). Chase argued that Mr. Ponce's wrongful-increase claim was judicially estopped because he failed to disclose the claim during bankruptcy proceedings, even though he had known of the increase. (*Id.*). Chase further argued that Mr. Ponce failed to state a plausible claim under Texas law and that Mr. Ponce's complaint made only conclusory allegations. (*Id.* at 2–3, 6–7). Chase alternatively sought a more definite statement. FED. R. CIV. P. 12(e).

Mr. Ponce did not respond within 21 days of the motion's filing. On November 7, 2018, the court held a status conference and permitted the parties to submit additional documents or briefing.

## II. The Standard of Review

Because the parties have both submitted admissible and relevant documents, the court converts Chase's motion to dismiss into one for summary judgment. FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). At the November 7 hearing, the court gave the parties until November 16 "to present all material that is pertinent to the motion." *Id.*; *see Gamel v. Grant Prideco, L.P.*, 625 F. App'x 690, 693 (5th Cir. 2015) ("Rule 12(d) also requires that if a court treats a motion to dismiss as one for summary judgment, all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." (quotation and alteration omitted)).

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact

4

and the movant is entitled to judgment as a matter of law." *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (quotation omitted); *see also* FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Savant v. APM Terminals*, 776 F.3d 285, 288 (5th Cir. 2014)). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). A fact is material if "its resolution could affect the outcome of the action." *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the

record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007).

### III. Analysis

Mr. Ponce alleged that Chase either wrongfully took or lost his payments and, as proof, submitted his payment history and mortgage statements. He contended that those documents show that Chase accepted his payments but did not credit them toward his mortgage principal. Contrary to Mr. Ponce's contentions, the documents show that Mr. Ponce's principal amount did not decrease more because his payments went towards interest, late fees, and other charges. For example, his December 2017 statement shows that, in 2016, Mr. Ponce paid $4,411.97 on his loan but that $4,136.97 went toward interest. His May 2018 statement shows that, between January and May 2018, Mr. Ponce paid $2,975.36, all of which went toward interest, taxes, and insurance. The fact that Mr. Ponce's principal decreased so little does not show that Chase wrongfully handled his monthly payments.

Mr. Ponce's mortgage statements also reveal that, between January 2017 and May 2018, many of his automatic deductions were reversed and that he fell increasingly behind on payments. While Mr. Ponce alleges that Chase lost his payments, and that is why he fell behind, the documents that he submitted show only that some of his payments were reversed. Even when viewed in the light most favorable to Mr. Ponce, the record evidence shows that Chase credited the payments Mr.

Ponce made, and Mr. Ponce has not pointed to any evidence supporting an inference that Chase did not do so. There is no genuine factual dispute material to whether Chase wrongfully took, improperly failed to credit, or wrongly calculated Mr. Ponce's mortgage payments.

Mr. Ponce alleged that Chase violated his mortgage agreements by wrongfully increasing his monthly payments from $451.88 to $466.72 in 2004. In his Promissory Note, Mr. Ponce agreed to pay Chase $66,103 through "360 payments of $466.72 each payment," with the first payment on September 18, 2004, and the final payment on August 18, 2034. (Docket Entry No. 5-1 at 67). Mr. Ponce's payment history and mortgage statements show that between September 2004 and August 2017, Chase billed, and Mr. Ponce was required to pay, $466.72 each month. The bankruptcy court issued an order confirming that Mr. Ponce's required monthly payments were $466.72. (*Id.* at 13). Mr. Ponce's evidence that he only owed $451.88 each month is an undated amortization schedule that states he could pay a $62,472.00 mortgage through 360 payments of $451.88. The amortization schedule is irrelevant because the Promissory Note, which Mr. Ponce signed and executed, shows that he took out a slightly larger loan, $66,103, with slightly increased monthly payments, $466.72. Mr. Ponce is bound to make the payments he agreed to in the Promissory Note and that the bankruptcy court ordered him to make. There is no genuine factual dispute material to deciding that Chase did not wrongfully increase Mr. Ponce's payments from $451.88 to $466.72.

Mr. Ponce alleged that Chase increased his monthly payment to purchase insurance and that, as a result, Chase had the obligation to repair hurricane damage to his home. The Promissory Note, Agreement to Purchase Insurance, and the Deed of Trust authorized Chase to purchase insurance on Mr. Ponce's home, and at Mr. Ponce's expense, if he failed to purchase insurance and provide Chase proof that he had done so. The insurance premiums would be added to Mr. Ponce's monthly payments. Beginning in September 2017, Chase increased Mr. Ponce's payments to $585.07

because of "Taxes and/or Insurance." Mr. Ponce claims that Hurricane Harvey damaged his home and that Chase, not the third-party insurer, must repair the damages. But he has not pointed to any evidence supporting an inference that Chase, rather than the third-party insurer, has an obligation to make the repairs. Under Texas law, a home owner is not a third-party beneficiary of an insurance agreement between a lender and insurer, unless the lender and insurer intended "to secure some benefit to" the home owner. *See Garcia v. Bank of Am. Corp.*, 375 S.W.3d 322, 326–28 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Because Mr. Ponce has neither identified specific record evidence nor articulated how that evidence supports an inference that Chase improperly refused to pay for repairs needed because of hurricane damage, summary judgment is proper on this claim. *Willis*, 749 F.3d at 317.

**IV.    Conclusion**

The record shows no factual dispute material to Mr. Ponce's claims, and the court grants summary judgment for Chase, (Docket Entry No. 5), and denies the motion for a more definite statement as moot. Final judgment dismissing the case with prejudice is separately entered.

SIGNED on November 19, 2018, at Houston, Texas.

                                                                          _____
                                                                          Lee H. Rosenthal
                                                                          Chief United States District Judge